Case number 15-1436 at Elm Crime Healthcare Centinela, LLC Doing business at Centinela Hospital Medical Center Petitioner British National Labor Relations Board Mr. Kernaghan for the petitioner Ms. Ginn for the respondent Mr. Kernaghan for the respondent Mr. Kernaghan Good afternoon. May it please the Court Jason Kernaghan of Shepard, Mullen, Richter & Hampton on behalf of the petitioner and cross-respondent Crime Healthcare Centinela, LLC As a young prosecutor in the United States Navy one of the first lessons I learned was not to overreach in a case When you're asserting charges against an accused and you overreach it can lead you down the path of failure from the outset of a case And here what we have is overreaching by the union and its information requests by the administrative law judge in the determination that impasse was not reached and that the refusal to respond to the July 23rd request was unjustified and then overreaching by the board by affirming the administrative law judge's decisions So on the theme of overreaching I guess my concern is that we not overreach and that leads into the standard of review question similar to the last case, frankly We have a deferential standard of review to the board here and then the key, if I'm analyzing this correctly and push back on me if I'm not the key is that they think the information requests met the low bar of relevance and from there everything else follows on impasse and we're reviewing all that deferentially So how do you get around that? Well I would rely on the written case cited in our brief that this is such a gross departure from the established precedent and the facts of the case that you need to take a look closer than deferential I mean if you look at the July 23rd request it's made under the guise of they needed information regarding care facilities for proper evaluation of the exclusive provider organization plan the EPO plan as I'm calling it Let's look at the facts here Bargaining started in December 2009 The EPO plan was first introduced in February 2010 at the bargaining table This request was not made until July 23rd, 2010 after five months of bargaining But that goes, I guess, to motive and, you know, there's a reasonable case there that you can make but that's not what we're really reviewing We're not reviewing their true motive We're reviewing whether it met a low bar of relevance and either the dissenting member on the board thought that it was outside it didn't get the presumptively relevant treatment but still thought it met the bar of relevance member Miskimara And so I take your point on their real motive I get that but I don't think we can really get into that too much Well, the standard that's set forth in Hiyoho Beach Hotels is it necessary and relevant And because they're seeking information that's outside of this bargaining unit we're looking at 18 hospitals here Prime Sentinella is located in Englewood, California off the 405 right by LAX Hospitals in Northern California San Diego, Texas, Pennsylvania, Nevada have no relevance to the bargaining at this facility because from a practical matter people are not going to drive from Los Angeles to Hershey, Pennsylvania to see their primary care physician Was the request relevant as to the hospitals that were in the area? It was over broad in scope in that regard My question is to the extent it sought I get that it sought more than that which is a big circle I'm asking you a smaller circle inside that sought this information as to the hospitals that were reasonably likely to be used by the employees Was it relevant as to that? Was that subset relevant? No, because some of the information they requested were PEPFAR reports PEPFAR reports deal with rates No, but I think that was turned down by the board or ALJ, one of those two So let's put that aside Okay, let's put that aside The stethoscenia rates at the hospitals they were likely to use Was that relevant? That's information that can be obtained to the joint commission That's no answer to not turning it over It was over broad in time and scope The Centinella facility was not acquired by the employer until 2007 Many of the other facilities were only recently acquired For five years, for the hospitals the medical facilities these folks were reasonably likely to use stethoscenia rates That's encompassed within this request Was that relevant? We'll never know because on August 24th I'm sorry, I'm just asking your opinion as counsel for the company Does that meet the legal standard for relevance? I believe not, no Because I think it was for an improper motive It was for a purpose of gain of insurance If it was for an angelic motive would it be relevant? If it was for an angelic motive the specific question of stethoscenia rates with respect to this plan when it was not requested with respect to any other plans No, I do not believe so Because? Because what we're talking about here is a requirement that you have a primary care physician who is the gatekeeper That was the holdup here And stethoscenia rates with respect to blood infections or the pressure ulcers that might require They're going to be required to use these hospitals for medical care, correct? No Do they need a hospitalization? No, because you could go to the Anthem PPO plan So there was no requirement If they were in the EPO plan which was part of what you're offering If you're in the EPO plan this is where you go, correct? Potentially, yes Potentially? Or they might go to one of those further away hospitals Well, or an out-of-network hospital Or an out-of-network facility Which costs a lot of money, right? Yes, Your Honor So I guess what I'm trying to get at here is my understanding of the law You tell me if I've got it wrong is that if there were at least material portions of the request that were relevant the fact that there may be some things that the employer thinks were too broad in time or too broad in coverage does not mean you just get to refuse to answer anything but it's on the employer Tell me if I've got this wrong but it's on the employer to say Look, almost like discovery Here's the things that you've legitimately asked for in our view Here's what you get Now, we're not going to go back ten years We think that's too long but give a reasoned explanation We're not going to all the hospitals but we'll go to the ones that it's foreseeable you all have to use because that seems reasonable to us But the employer here didn't do that So do I have the law backwards? I think it's not the law it's the factual inquiry because as set forth in the August 24, 2010 letter from the hospital they offered to meet and confer face-to-face with the union and they also offered to enter into a confidentiality agreement with respect to certain document production Now, that's a different issue confidentiality The ALJ found that there was no confidentiality issues The union agreed to take out all personal identifying information So that's a separate question than the question Judge Millett has asked me So assume for the moment that that's not part of the issue What's the answer to her question? The hospital offered a face-to-face meet and confer to resolve these issues It's set forth in writing It's at the Volume 2 of the Joint Appendix 11-19-24, I believe And in there it expresses Let's sit down and talk about these issues And on September 15, 2010 the union unequivocally rejected that request So to hold the hospital Sorry, so is that a sufficient Is there any case law that says that's a sufficient response to a document request that includes at least a material percentage of relevant inquiries? Well, I think it would run afoul of the case law such as Local 13 of the Detroit Press that the union is under an obligation to bargain in good faith And this is not a good faith negotiation with respect to this production if they're refusing to meet face-to-face So it sounds like mainly what you're relying on here is the bad faith argument You didn't have I get that you say you do If you didn't have that maybe this wouldn't work But it sounds to me like you're saying the reason the approach taken by the employer was sufficient in this case is because you had a sort of bad faith concerns here and you wanted to meet to address it that way Am I understanding the argument right? I don't want to put words in your mouth They might be better than my own Along those lines I think, yes you had to There had to be a discussion between the parties to determine what hospitals are in the kind of zone or sphere of actual usage and then you can move on as to what documentation with respect to those facilities would be appropriate However, based on the September 15th rejection of the offer for a face-to-face meeting This isn't let's exchange more letters This is outside of the bargaining table Let's have the parties get together in a meeting and discuss What's the page? Just tell me again It's on the JA page of the request for the meeting It's volume 2 JA 1128 It's an August 24, 2010 letter to Daniel Bush who was the lead negotiator from the union Volume 2? I'm sorry, volume 3, Your Honor I apologize Volume 3, 1128 Why would they want to do that outside the bargaining? I'm just curious Why would they say let's do this? Because I thought the union's response was Look, we're in negotiations Let's do this through the negotiating process But is there You're representing employers Is there a reason for that? I misspoke Not necessarily outside the bargaining context but a separate bargaining session with respect to this discrete issue not the proposals Oh, okay So a session just on the documentary Correct And so I apologize for misspeaking in that regard Your Honor, if you look at 1128 it states in the third full paragraph second sentence Quote As such I would like to schedule a face-to-face meeting with you to discuss the SEIU's positions and that of Sentinella And it's specifically referencing the disagreements over documents in connection with the proposed EPO plan They don't say anything other than it's too broad They were given a very extensive letter from the union explaining the relevance of every element of the request dated August 17th Well the August 17th request in and of itself narrowed the scope of the request in that it referenced five Los Angeles hospitals only mentioning one by name That's not answering my question I'm saying that the union and this is the letter that the board and the LGA relied on very specific about why its requests are relevant The response doesn't say why they're not relevant That was the purpose of the face-to-face meeting so they wouldn't have back and forth in these letters It was let's sit down and try to hammer out a solution And the union responded in a perfectly reasonable way saying look we don't want to have this separate meeting Let's do it as part of the negotiations We'll make it the first order of business But we believe it's all relevant We've explained to you why it's that And so was it the first order of business of the next meeting and why wasn't it provided then? Well the next bargaining session rather than discuss the issue with respect to document production the union provided an EPL proposal So the fact that they were able to provide an EPL proposal at the next scheduled bargaining session after this correspondence exchange evidence is that the information really wasn't necessary and relevant No I don't think at all I think evidence is that the union was engaged in good faith negotiations but they've still got to know about this EPL plan They've got to know before they can recommend it And there was full and fair opportunity to discuss it at the September 30th bargaining session There's no evidence in the record that it was With that I have reserved some time for rebuttal So if there's any more questions Sorry We'll hear from the NLRB Thank you Good afternoon Amy Ginn for the NLRB I will just pick up where we left off with this idea that the union was not willing to bargain over the information request Indeed the union responded to the request for a face to face meeting between only the lead negotiators with the statement that they would be willing to bargain about the information request and health insurance at the next session and make it the first order of business So there's just no evidence here that the union was not willing to negotiate over this information request And the hospital at no time provided or offered to provide any information responsive to the request as to any hospitals or as to any of the requested categories of information In terms of the statement that the union somehow narrowed its information request in its August 17th letter and this is at JA 1120 also in volume 3 so just prior to the letters we were just looking at In that letter the union did not narrow its request to only five hospitals The union stated made a statement on page 1120 that five of the six hospitals in the United States with the highest septicemia rates are prime hospitals in the Los Angeles area and then named one particular hospital By making that statement as background information as to its concern about the quote astonishing septicemia rates at the hospitals the union was certainly not narrowing its request for the information to only those hospitals Can I ask you a question? So there's the sort of very generous discovery standard of relevance that's used for whether or not an information request was relevant and properly made And then impasse also asks whether an issue was I'm sorry whether the failure to turn over information was relevant sort of in a causal sense to the impasse Is that you couldn't have some little side thing here and then say maybe that would excuse that would have forbidden foreclosed finding an impasse if there was just some side little information dispute There has to be some importance to some relevance to the outstanding information request before it would lead to an impasse But I'm trying to understand how that relevance inquiry compares to the relevance inquiry for the information request in the first place Am I at all clear on what I'm asking? Maybe. Let me try. So the cases that say that failure to provide relevant information precludes a finding of genuine impasse Those cases talk about the fact that the failure to provide relevant information has to be as to a core issue in the bargaining So in this case we know that health care plan is a big issue and that the failure to provide information was as to a key issue that the parties were bargaining over There are other situations and I don't believe this is in our brief but it is in the board's order There is a case called Sierra Bullets In that case there were key issues that the parties were having trouble reaching agreement on There were several One was management rights I think there may have been a subcontracting issue There was also separately a bargaining violation for failure to provide information about overtime Now the board in that case said failure to provide information about overtime it was relevant to bargaining so it is still a separate independent violation of impasse in that case because it didn't go to the core issues that the parties were having trouble resolving I'm not sure if that answers your question I'm still wondering when you say when it is relevant to a core issue I get there has to be a nexus between the information request and a core issue but could it be something under discovery standard of relevance for example the request for nine or ten year period of information they had provided five years of information on Medicare billings and discharges and then provided everything else we are missing four years from Medicare billings and discharges which would meet relevance standard generic whether it is legitimate information request would that be enough would that make it irrelevant I understand what you are saying I don't specifically know the answer to that I can't think of a case that deals with that most of the time the union has to be able to carry out its bargaining duties so I think there would be an argument there if the union has most of the information or substantially all of the information are they still really precluded from carrying out their bargaining duties to the extent that they couldn't reach an agreement like I said I don't specifically know the answer I think there could be some argument there that it is not increasing the friction between the parties and the type of bargaining that creates a problem  don't provide relevant information that the union needs. That segues a little bit into another point that the hospital made in their briefing which was that they see that there is no evidence that providing this information would have caused the union to agree to the hospital's terms. And as we discussed in our brief, that's simply not the standard. There doesn't have to be evidence that the union would accede to a certain demand because it's now been provided with the information. The idea is that they're being asked to pay substantially more than what they were paying for their prior plan. And they've agreed at this point that there will be an EPO plan. They understand the hospital's position on that, but the terms are still to be worked out in terms of access to the outside network, how much that will cost employees, how much the overall plan will cost employees. So the union is trying to determine how much we're willing to pay for what we're going to get. And what they don't know is what are we going to get. This request went for a long, I think it was either nine or 12 years.   asking for a plan that would be presumptively relevant. Does the time scope of the inquiry factor into presumptive relevance or do we just look at the substantive content of what they're asking for? Again, I can't think of any cases that limit the relevance of information based on the time scope. I think, again, it depends on looking at is there probable or potential relevance to the union's position in bargaining and to carrying out their duties in bargaining. The board would have to consider an argument that was made to it, which I don't believe this. An argument was certainly made here that the information request was overly broad. With respect to the time scope here and the argument that Prime didn't own these hospitals during some of that period, the request itself is written very specifically directed at Prime. So if Prime didn't own the hospital in 2001, it wouldn't have any of this information from 2001. And nothing in the information request is asking them to go get it from their predecessor. It's just saying exchanges between Prime and whether it's a regulator or within the Prime facilities that was exchanged. So there's no request for information that's outside the time that Prime owned the facilities if they didn't own them in 2001, which is when the request started. Can I ask you a question about this motion for abeyance? Sure. It looks like this 2014 agreement requires if it were to be enforced by the board, and I'm not asking you to speculate on that, requires a dismissal of all unfair labor practice charges. Would that include this one, the ones at issue in this case? Your Honor, I believe the parties have stated that their understanding was it would. However, at this point, the charging party union in this case cannot simply dismiss a charge now that we have a final order of the board. So at the time that the parties were negotiating that in November 2014, there was no final order of the board in this case. The board order came in November 2015. Now that there's a final order of the board, and there are some policies and procedure memos that I can point you to on this subject, but the board will not allow a charging party to simply dismiss a case once there's a board order finding a violation of the act. Any settlement, for example, has to be approved by the board once there's a final board order. Is that part of this proceeding then that would go on before the board right now? If they were to approve it, they would have to, in the process of approving it, approve the dismissal? So the... If... I'm sorry. So whether they should enforce the 2014 agreement is an issue before the board right now. And that 2014 agreement as written says dismiss unfair labor practice charges which the party's intent was to include this case. So does that mean that part of the board's proceeding there, if it were to decide that it should enforce, and I think I agree with the ALJ if I'm correct in that case, that it should be enforced, would necessarily in that process determine that these charges should be dismissed? Because the board is the decision to make and presumably would make it as part of enforcing the agreement. So the ALJ's decision that's currently pending before the board states that the hospital is required to execute the agreement that was reached in November 2014. The board in that case will not be looking at the substantive terms of that agreement. So the board won't be looking at the substantive terms to say anything about dismissing those charges. I mean, why wouldn't the general council point this out? You've got an agreement here. And say, look, there's a wrinkle now because it seems like you can't enforce something that doesn't let them get their side. They're part of the benefit of the bargain. That would seem quite unusual to me. I mean, again, I'm stating my understanding that the parties are including the charges in this case in that document. It doesn't give the case numbers. It doesn't state that. That's my understanding. I don't even know if that's for certain, the contemplation. I mean, not being a party to that document or anything to that effect. I don't know that it's been discussed in any of the papers in that other case either. Is that incumbent on the general council leader to flag this issue and address it? Well, again, the general council isn't looking at the substance of requiring the parties to enter into any kind of substantive agreement. I mean, the issue in that case was whether, my understanding is because, again, I'm not involved in that case, was whether the parties indeed had reached an agreement that then the hospital failed to execute. So it's incumbent on the company to raise this issue before the board and let them know it needs to get resolved. It was certainly being incumbent upon the hospital to raise that issue to the board. Just more broadly, in this case that's before the court right now, there is no need for abeyance in this case. There is a continuing obligation in the board's order to cease and desist from the activities that were found to be in violation of the unilateral changes that were made. And to the extent that the hospital is arguing that in November 2014 they reached a collectively bargained agreement with the union on a health care plan, and they want to argue that that is in compliance with the order in this case, that's something they will have the opportunity to do in the future. If they feel that the board has obligations also in this order that go beyond simply what's stated in the November 2014 term sheet. Right, which in theory would maybe go away if the November 2014 settlement were to go forward. Portions of the board's order they may have complied with already if they have done what is stated in the November 2014 term sheet. I don't know if that's happened, but for example, if they already partially made whole the unit employees for these additional premiums that they had to pay, which is something that's contemplated in that term sheet, if they've already done so, that's partial compliance with the board's order and they can show that at the time that they go into compliance proceedings. How long do these compliance proceedings take to be initiated? How long could they be hanging out there under two different orders? Do they get started right away? Compliance proceedings can certainly start right away. There are times compliance proceedings begin even before court enforcement of an order, but that's up to the respondent to  Regents will at any time consider arguments about compliance or evidence in particular. Does a company have an ability to say, shoot, I'm going to be sued? Suddenly we're here betwixt and between. We need to have a compliance proceeding now or is it entirely in the control of the regional director? The regional director is responsible for showing the back pay that's owed, those types of things, or in this case it would be back health care reimbursement that's owed. So that is incumbent upon the Regent to produce those documents and then the hospital would have to wait for that to happen. Your red light's on. Thank you very much. Do we have any time for the other side? We'll give you two minutes. In your honor, just to touch on your statements with respect to the abeyance. Could you raise the issue of the abeyance before the board? Could you raise the issue of inconsistency before the board at any time? I'm not the one to answer that question because Shepard Mullen is not the firm handling that other matter. I know the issue... The board says you didn't in their response to the brief. So I assume you looked into that and you found that you did not raise the issue before the board. My understanding is that it has not yet been raised before the board. That means we don't have jurisdiction. Any issue not raised before the board were statutorily barred from considering. But the consideration with respect to holding an abeyance is not yet right because they have not been before the board. But you had an opportunity to settle the case if you wanted to. You could have complied with the agreement and not challenged it. You challenged it. So cases go on. That's what happens when people don't ultimately resolve the matter. If you settle the case today, you go back, you go outside there, you agree to do everything they ask, maybe reach a settlement before we issue an opinion. Otherwise, once we issue an opinion, that's the end of it. An opinion doesn't become moot after it's issued. So that's your chance. You've had a chance since you discovered this problem and maybe you have a few more minutes.  ask you about the issue before the board. Since that issue will still proceed before the board, there is a real risk for inconsistent rulings. My concern is that getting a compliance hearing will not be as expeditious as represented, especially in light of the general council memo that came out on Tuesday citing the general council memo. Should inconsistent rulings be issued, a  proceeding is not going to be something that is months or years in the making. It could be multiple years in the making. What is your objection to the settlement agreement? Why was it appealed? Why was there an appeal? I do not want to disclose anything. I am certainly not asking for that. Do you want to respond at all? You have 43 seconds. Do you want to respond at all to the arguments made by the opposing council? The only argument I would raise is that here again we are not relying on presumption of relevance. We are relying because it is seeking operations outside of the bargaining unit. It is a heightened standard. It is the union who is under the burden to establish that relevance. You did not just refuse to provide information about outside hospitals. You refused to provide any information at all. I say you by the way. Not you personally. Your client. I guess I would invite the court's attention to Columbus Products Company which states it is on the union to show that the failure to provide this information impeded it from discharging its statutory obligations. Well, they made that argument and ALJ upheld it. That is precisely the point that the opposing council made which the question here of whether there was sufficient quality for the union to be willing to have its members pay depended on how good the hospitals were. And if they couldn't find out whether the hospitals were good or not, they couldn't find out whether they wanted to force their members into those hospitals but more importantly whether the amount that would be paid would be appropriate. And you yourself in your brief say that health care is a critical issue in  bargaining. Correct. Health care. And what we're referring to is a health plan, an EPO plan that was already in place at Garden Grove Hospital, at Encino Hospital for which the union was already representing members. It had been in place for seven months at the time that the request for information had been made. As they point out, it's not the same members, different members. It's the members here and they have an obligation to represent these members. But it's the same plan. It's the same plan but they have an obligation to the members for these other benefits.  when you look at the bargaining notes from the union, it clearly establishes that they're not going to be able to  based upon the diametrical opposite positions of the hospital and the union. And there is no reference to this information that's missing. It's just philosophical differences regarding the primary care position and the fact that employees will be required to contribute if they want family health care. When the company announced in September 2010 there was a process for physician nominating process. It's something we made the union aware of on August 23rd. Does the record show whether any employees filled out those forms? I don't believe so. Okay. We'll take the matter into submission. We thank both sides. Thank you very much.
judges: Garland, Kavanaugh, Millett